### POCHEL v. READ et al.

(Supreme Court, Appellate Division, Fourth Department. July 30, 1897.)

1. FRAUDULENT CONVEYANCES—DELAYING CREDITORS.

A debtor being pressed by his creditors, and having 2,000 bushels of potatoes, which he was holding for a rise in price, borrowed money from his half-brother, giving a chattel mortgage on the potatoes and other property, which was not excessive security. The mortgagor stated that if he did not get the money he would have to sell the potatoes, but it was shown that the money was intended and actually used for the payment of his creditors. *Held*, that the mortgage was not fraudulent, as a matter of law, as being made with intent to hinder, delay, or defraud creditors.

2. SAME—INTENT.

In order to prove a transfer void under 4 Rev. St. (8th Ed.) pt. 2, c. 7, tit. 3, § 1, which provides that transactions are void which are made "with intent to hinder, delay, or defraud creditors," it is necessary to prove the intent to hinder, delay, or defraud, as well as the actual hindering, delaying, or defrauding.

Appeal from special term, Erie county.

Action by Charles N. Pochel against Elgene W. Read and William E. Read. From a judgment in favor of plaintiff, and an order denying a new trial, defendants appeal. Affirmed.

The action was to recover the value of personal property sold upon an execution issued upon a judgment against Edward F. Pochel, the plaintiff claiming title to the property under a chattel mortgage executed to him by Edward F. Pochel prior to the defendants' levy upon the property. The trial was had before a judge of the supreme court and a jury. The jury rendered a verdict for the plaintiff for the value of the property taken under the execution.

Argued before HARDIN, P. J., and ADAMS, GREEN, and WARD, JJ.

W. G. Laidlaw, for appellants.
John Cunneen, for respondent.

WARD, J. The defendants' counsel upon the trial made a motion for the direction of a verdict in the defendants' favor upon the ground that by the evidence of the mortgagor and the mortgagee the mortgage was fraudulent as against creditors of the mortgagor, which motion was denied, and the defendants excepted, and upon this appeal it is insisted by the defendants' counsel that the transaction is condemned by section 1 of title 3 of chapter 7 of part 2 of volume 4 of the eighth edition of the Revised Statutes, which is the section making void transactions made or had "with intent to hinder, delay, or defraud creditors," and that upon the evidence in this case we must find as a matter of law that the mortgage was void, for the reason that the conceded acts of the parties to the mortgage did hinder and delay the creditors with intent so to do; and makes the further point

that, if this were not true, still the evidence before the jury, when reviewed by this court, so clearly established an intent to defraud, hinder, and delay the creditors of the mortgagor on the part of the parties to the mortgage, that we must so find, and reverse the judgment and order.

This requires a brief statement of the facts as they were fairly established before the jury. The plaintiff and the mortgagor were half-brothers. The plaintiff resided at East Aurora, in Erie county, and his brother in the town of Yorkshire, Wyoming county. On the 16th of January, 1895, Edward F. Pochel was indebted to the plaintiff upon a promissory note which had been given for value, borrowed money, goods sold, and other considerations amounting to $279, principal and interest. A few days before that time Edward had applied to the plaintiff for a loan of $1,000 in money, stating that he needed the money to pay some debts, and that if he could not get the money he would have to sell potatoes, of which he had a considerable quantity, and which he wanted to keep for a better price, as the price was then too low. The plaintiff said that he did not feel like putting up this money on those potatoes, as the price might go down instead of advancing; that he did not have the money, but would have to borrow it, to which Edward replied that he could take a mortgage on the potatoes and his other personal property to secure him for the money, and it was agreed that the mortgage should be executed if the plaintiff would procure the money. He went to a banker, and procured the money,—$900,—and the mortgage was executed to secure the repayment of that money and the amount due upon the note and some small items, making an aggregate of $1,225; whereupon the note was surrendered to Edward and the $900 paid to him and the mortgage duly filed in the town clerk's office of the town of the mortgagor's residence. The mortgage covered all of the personal property of the mortgagor, or substantially so, and it does not appear to have been more than sufficient security for the amount secured. Edward, on the day, and within a day or two after the execution of the mortgage, paid substantially all of the money that he had received to various creditors, paying three of them on the very day of the execution of the mortgage. The mortgage was in the usual form, without any conditions expressed therein authorizing the mortgagor to retain possession of the property; but there was some evidence tending to show that the parties agreed verbally that the mortgaged property should remain in the mortgagor's possession until the plaintiff wanted it. The defendants were judgment creditors of the mortgagor, and in their answer justified the taking of the property under an execution issued upon their judgment. There were about 2,000 bushels of the potatoes. The plaintiff testified that "he [the mortgagor] said that if he didn't get the money of me he would have to sell his potatoes, and I took the mortgage so that he might keep the potatoes. I didn't know there were 2,000 bushels. * * * I took his word for it." It is upon this statement, disconnected from the other evidence in the case, that the learned counsel for the defendants insists that it was established upon the trial, as a matter of law, by the testimony of the mort-

gagee himself, that the mortgage was taken to hinder and delay the creditors of his brother, but we cannot extract a single statement or line from the evidence of the witness, and draw an inference therefrom, especially an inference of fraud; but we must take the testimony all together. The sting seems to be taken out of this statement by other statements of this witness where he says that, unless the creditors were paid, his brother said he would have to sell his potatoes, which he did not want to do because the price was low; and he testifies that the giving of the chattel mortgage was not for the purpose of hindering, delaying, or defrauding any person whatever, and that he had no such intention. Indeed, the jury might fairly infer from the evidence—which they undoubtedly did—that, instead of executing the mortgage for the purpose of hindering and delaying the creditors, the purpose was to raise money by means of the mortgage to pay the creditors, and thus prevent a sacrifice of the potatoes at a low price, which would be necessary if the money were not borrowed. This being so, there was no intent to hinder or delay the creditors, the intent rather being to aid them in collecting their debts. The transaction must not only hinder and delay the creditors, but there must be an intent to do so. It is difficult to conceive of a transfer or assignment of property by way of general assignment, mortgage, or otherwise that does not tend to delay the collection of the debts of the creditors. But these transfers, if made in good faith, and without intent to hinder or delay, will be sustained. We are unable to say, therefore, as a matter of law, that the transaction was fraudulent, or that there was an intent to hinder and delay the creditors on the part of the plaintiff. The questions were questions of fact for the jury. The learned trial judge fairly submitted these questions to the jury, and specially charged them that, as there was no change of possession of the property mortgaged, a presumption was created that it was fraudulent as against the creditors of the mortgagor, which presumption the plaintiff should overcome with a fair preponderance of evidence. We think that such evidence was given as to enable the jury to reach that conclusion. This view also disposes of the other point made by the defendants, and leads to the conclusion that the judgment and order should be affirmed. All concur.